### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| SUSAN A. TROUTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:04-CV-530-PRC |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 4], filed by the Plaintiff, Susan A. Troutman, on January 19, 2005, and on the Plaintiff's Motion for Summary Judgment and Memorandum in Support [DE 16], filed by the Plaintiff on June 13, 2005.  The Plaintiff seeks judicial review of a final decision of the Defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), by which the Plaintiff was denied Social Security Disability Income Benefits ("DIB") under Title II of the Social Security Act.  The Plaintiff seeks review pursuant to 42 U.S.C. § 405(g).  For the following reasons, the Court grants the Plaintiff's request to remand the case for further proceedings before the ALJ on the basis of the ALJ's credibility determination and the ALJ's failure to address the Plaintiff's drowsiness, confusion, and nap necessity as a result of her medications.

## PROCEDURAL BACKGROUND

On May 21, 2001, the Plaintiff filed an application for DIB, alleging disability since May 10, 1999.  The Plaintiff's application was first denied on July 25, 2001, and upon reconsideration on October 24, 2001.  On November 29, 2001, the Plaintiff filed a timely Request for Hearing by

Administrative Law Judge.  The hearing was held on July 18, 2002, in Merrillville, Indiana, before Dennis R. Kramer, Administrative Law Judge ("ALJ").  The Plaintiff was represented by counsel at the hearing.  The ALJ denied the Plaintiff's claim for disability benefits in a decision dated December 16, 2002, which included the following findings:

> (1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

> (3) The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

> (4) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

> (5) The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reason set forth in the body of the decision.

> (6) The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

> (7) The claimant has the residual functional capacity: to lift no more than 10 pounds frequently and 20 pounds occasionally; to stand and/or walk no more than two hours in an 8-hour workday; to sit no more than 6 hours in an 8-hour workday; and to climb, balance, stoop, kneel, crouch and crawl no more than occasionally.

> (8) The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

> (9) The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

> (10) The claimant has a "high school (or high school equivalent) education" (20 CFR § 404.1564).

> (11) The claimant has transferable skills from past relevant work but transferability of skills is not an issue in this case (20 CFR § 404.1568 and 416.968).

(12) The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

(13) Although the claimant's exertion limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.29 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

(14) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

R. at 22.

The Plaintiff timely requested review of the ALJ's decision on December 19, 2002. On September 24, 2004, the Social Security Appeals Council found no reason under its rules to review the ALJ's decision, and denied the Plaintiff's request for review. Therefore, the ALJ's decision of December 16, 2002, is the final decision of the Commissioner.

The Plaintiff timely filed her Complaint with this Court, seeking review of the final decision pursuant to 42 U.S.C. § 405(g) and alleging that the ALJ's decision was not supported by substantial evidence and was premised on errors of law. On June 13, 2005, the Plaintiff filed a Motion for Summary Judgment and a Memorandum in Support of Motion for Summary Judgment. On September 20, 2005, the Commissioner filed a Memorandum in Support of the Commissioner's Decision Judgment, arguing that the ALJ's decision was supported by substantial evidence. On October 4, 2005, the Plaintiff filed a Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment, reiterating her arguments that the ALJ's decision contains errors of law and is not supported by substantial evidence.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636© and 42 U.S.C. § 405(g).

**FACTS**

**A.  Background**

The Plaintiff was born in 1965, and was 37 years old at the time of the ALJ's decision.  The Plaintiff previously divorced but is currently married.  She has six children that may be eligible for Social Security.  The Plaintiff has a General Education Diploma (GED) and attended a secretarial school.  She has work experience as a legal secretary, waitress, gas station attendant, pharmacy assistant, and cabinet builder.  She alleges that she has been disabled since May 10, 1999, due to limitations caused by back, knee, and foot impairments.

**B.  Medical Evidence**

The Plaintiff was involved in a serious automobile accident on December 31, 1993, and developed back and neck pain as well as a severe headaches.  She was diagnosed with a herniated lumbar disc at L4-L5 and underwent an automated percutaneous lumbar discectomy on October 15, 1994.  The Plaintiff's back pain worsened after she fell in September 2000.

On November 14, 2000, Dr. Klepsch completed a welfare agency form indicating that the Plaintiff could not work due to chronic patellar-femoral malalignment and chronic plantar fasciitis.  He indicated that the Plaintiff could only perform sedentary activities and that she could not be on her feet, crawl, kneel, or climb stairs.

On November 21, 2000, the Plaintiff sustained a low back strain while bathing her child.  On December 4, 2000, the Plaintiff underwent arthroscopy of the left knee with resection of plica and lateral retinacular release for her patellofemoral malalignment of her left knee.

The Plaintiff fell down two stairs in April, 2001 and injured her back.  Although she describes her pain as "10 on a 10 scale," Dr. Vockovic wrote that "[h]er symptoms are out of

proportion to her physical examination findings." R. at 114.  On May 27, 2001, she went to the Methodist Hospitals, Inc., where Dr. Thephasdin found that she had low-back pain with radiation down the left leg, as well as numbness and weakness of the left leg.  In his report, he stated that she fell down eighteen stairs.  In May 2001, an MRI and lumbar myelogram confirmed disc herniation at L5-S1. On May 30, 2001, the Plaintiff had a  lumbar myelogram performed and on May 31, 2001, she underwent surgery automated percutaneous lumbar discectomy at L5-S1.

An RFC from Dr. Dobson, a DDS physician who did not examine the Plaintiff, dated June 8, 2001, diagnosed the Plaintiff with lower back pain, plantar fasciitis, and patellogemoral malalignment, and also determined that she can stand or walk for 6 hours in an 8-hour workday.  Also, Dr. Dobson, after reviewing all of the documentary evidence, concluded that the Plaintiff could perform occasional postural maneuvers, and had no manipulative, visual, communicative, or environmental limitations.  Yet, a letter dated June 18, 2001 from Dr. Klepsch, the Plaintiff's treating physician, states that he treated the Plaintiff for patellofemoral malalignment with arthroscopy and lateral retinacular release.  Also, in this letter, Dr. Klepsch asserts that during the Plaintiff's last visit on May 24, 2001, she still had problems with her right plantar fasciitis, but that the left side was doing fairly well.  Ultimately, in that same letter, Dr. Klepsch opined that the Plaintiff should not be required to do a lot of squatting, kneeling, stair climbing, or be on her feet for excessive periods of time, that requiring flexion might be a problem for her, and that being on her feet for excessive periods of time would aggravate her plantar fasciitis.

On June 22, 2001, the Plaintiff filled out an "Anxiety and Panic Attacks" questionnaire.  In this questionnaire, the Plaintiff stated that she has been having panic or anxiety attacks for two years from stress associated with the inability to support her family, overdue bills, and health problems.  Her doctor prescribed Xanax to help calm her.  Dated July 14, 2001, the Report of Contract verifies

5

that the Plaintiff experiences anxiety and is taking Xanax. A Psychiatric Review dated July 19, 2001 indicates that she has an anxiety related disorder.

An MRI was completed on August 17, 2001, showing a minimal disc bulge with bony spurring posteriorly to the left at C3-4, but no disc herniation or other significant abnormality. Dated September 6, 2001, a Reconsideration Disability Report indicates an overall condition of anxiety. A September 2001 EMG and nerve conduction studies did not evidence tarsal tunnel syndrome, radiculopathy, or other disorder of the lower motor neuron. The Plaintiff saw Dr. Klepsch again on October 15, 2001, and other than tenderness in the Plaintiff's right foot, Dr. Klepsch could find no abnormalities upon examination. He indicated that treatment short of surgery had been exhausted and that surgery might not be effective. In November 2001, the Plaintiff had another MRI and the MRI Report concerning the Plaintiff's lower extremities confirmed plantar fasciitis.

On December 10, 2001, Dr. Thephasdin stated in his Medical Assessment of Ability to Do Work-Related Activities that the Plaintiff requires more than 2 hours of rest in a reclining position during an 8-hour period, and needs crutches in order to keep her weight off her feet. He further opined that the Plaintiff could lift/carry less than 5 pounds, stand/walk less than ½ hour, and sit a total of 2 hours in an 8 hour day. The next day, on December 11, 2001, the Plaintiff underwent bilateral plantar fascia release and nerve compression surgery on both feet. On May 3, 2002, the Plaintiff reported to Dr. Thephasdin that she had been in a wheelchair for over two months after her surgery.

The Plaintiff visited the Emergency Room on January 13, 2002, where she stated that she had severe low back pain, rating it as a 10/10, and describing the pain as feeling like a knife was stuck in her left flank. In March 2002, the Plaintiff reported neck pain, headache, and progressive

6

weakness of her left arm.  An MRI revealed a herniated cervical disc, for which she had an anterior cervical fusion done on March 26, 2002.  Again, on May 3, 2002, the Plaintiff was admitted to the Emergency Room and was barely able to ambulate.  She was then referred to Dr. Stewart for pain management.

Dr. Stewart noted that the Plaintiff is taking Kadian, Vicodin HP, and Neurontin and is uncomfortable, sleepy all of the time, and continues to be very sedated as a side effect to her medication, specifically Neurontin.  Dr. Stewart further asserts that because her pain is nerve-mediated, it is difficult to treat.  On June 11, 2002, the Plaintiff's symptoms consisted of pain and difficulty walking and Dr. Stewart listed her prognosis as "poor." R. at 304.  Emotional factors possibly contributed to the severity of her symptoms and functional limitations, and pain constantly interfered with attention and concentration.  Dr. Stewart determined that depression and anxiety are the psychological conditions affecting the Plaintiff's physical condition.

On July 12, 2002, Dr. Forgery indicated that the Plaintiff would like to take Xanax again for stress.  Finally, on July 19, 2002, Dr. Thephasdin noted that the Plaintiff had mostly recovered from her neck symptoms and no longer suffered from headaches.  She still had problems with her back, leg, and right foot.

### C.  Plaintiff's Testimony

At her hearing held on July 17, 2002, the Plaintiff provided the following testimony.  Plaintiff has a GED, is 5 feet 5 inches tall and weighs 185 pounds.  In May 1999, the Plaintiff was fired as a legal secretary because she could not use the stairs due to blackout spells.  Her worst problem is her back pain but she also has problems sitting and bending.  In fact, she cannot sit up straight and when sitting, she is in constant pain, and she must sit to the right or left because she

7

cannot sit directly on her tailbone.  She also cannot lean over the bathtub to give her children a bath and lifting a gallon of milk strains her.  The Plaintiff is unable to sleep on her stomach or back due to her pain; otherwise, her back locks up and she cannot move.

The Plaintiff's condition worsened in 1994 after the surgery on her lumbar spine.  Her back "went out completely twice" before her second lumbar surgery in 2001.  R. at 416.  She continued to have pain after the second surgery.  She had pain at a level of 9-10 on an ascending 10-point scale two or three times per day for a "couple hours at a time."  R. at 418.  Her pain was probably worse before the 2001 surgery.

The Plaintiff also had problems with her cervical spine since her alleged onset date, with severe migraine headaches that lasted a couple of hours four to five times per week, which then led to blackout spells.  She had surgery on her cervical spine in April 2002.  Since the surgery she has had one or two headaches per week, but they were not incapacitating like the pre-surgery headaches, reaching a level of 7/10 on a pain scale.

Due to an injury from a car accident, the Plaintiff underwent arthroscopic surgery on her left knee in December 2000.  Before the surgery, she could not walk up or down stairs and she had pain of 9/10 to 10/10 severity in both knees.  Her knee would give out and she fell down the stairs on one occasion.

The Plaintiff underwent surgery on both feet in December 2001.  Prior to surgery, she was given numerous cortisone shots and had a cast.  Also before the surgery, she was in excruciating pain when she walked and would therefore tiptoe; but she was able to go to the store and do light shopping.  Before the foot surgery she could stand 20-30 minutes, but she could not and cannot climb stairs.  Also prior to her surgery, during an 8-hour day, she would sit at least 4-5 hours, and

then lie down for 2 hours.  Both before and after her surgery she could bend and touch her toes, kneel occasionally, but could not squat or climb stairs.

After the surgery, the Plaintiff was in a wheelchair for almost three months.   Her left foot was doing better, but she still could not put her right heel down.  Even with medicine, her pain is severe allowing her to walk only about 20 minutes and then only if wearing shoes.  After walking for 20 minutes, she must rest her feet for hours because they spasm and hurt.  Her medicines make her extremely drowsy.

During a typical day, her husband must help her get out of bed because her back freezes up. She has a two year old, three year old, six year old twins, a twelve year old, and a nineteen year old. She helps the younger children dress, makes breakfast, sits for a couple of hours, and does housework gradually.  After she makes their light breakfast, such as cereal or toast, she needs to sit down for a couple of hours before engaging in any further activity.  She can only stand at the sink for a few minutes before needing to sit down and rest.  She lies down for 2 hours every afternoon. She is still unable to sit straight in a chair due to lower back pain.

The Plaintiff takes Kadian daily, and Vicodin for severe pain.  She is drowsy throughout the day as a result of her medicine.  At times, she has a hard time following ideas, and when this happens, everything gets blurred.  She does not know whether this difficulty is a side effect of the medication or caused by her headaches.  She also takes Neurontin, which makes her drowsy.

The Plaintiff's husband, Daniel Troutman, also testified at the hearing and indicated that he often finds his wife crying when he comes from work.  He remembers more than one time when he had to drive her to the hospital to get shots for her back.  He asserted that he often has to do the laundry and household chores because the Plaintiff is unable to do the work.  He also stated that her medication makes her tired, her conversations wander, she mentally cannot follow ideas, and that

she was not supposed to drive while taking her medication.  He also said that because the medicine makes her so tired, he is afraid for the kids when he is at work.

### D.   Testimony of the Vocational Expert

The Vocational Expert, ("VE"), Michelle Pagella, is a certified rehabilitation consultant who testified at the Plaintiff's July 17, 2002 hearing.  The VE was provided with a summary of the Plaintiff's vocational history prior to her arrival at the hearing.  She testified as to the Plaintiff's past relevant work experience and classified those jobs.

The ALJ asked the VE to consider some different situations.  In the first hypothetical, the VE stated that based on Exhibit 9F, which was Dr. Dobson's assessment of the Plaintiff, and also given the Plaintiff's past work, date of birth, and educational level, the Plaintiff would be able to perform light work, in a cashiering or secretarial position.

In the second hypothetical, the VE stated that based on Exhibit 16F, which is Dr. Thephasdin's assessment of the Plaintiff, as well as her past work, age, and educational level, that the Plaintiff could perform no work.  The reason she could perform no work is that the report indicates that she would need to recline two or more times per day for up to half an hour.

In the third hypothetical, the ALJ had the VE refer to Exhibits 9F, which is Dr. Dobson's report, and 13F, which is a letter from Dr. Klepsch.  First, the VE determined that based on Exhibit 13F alone, which is a letter from Dr. Klepsch, the Plaintiff should not be required to squat, kneel, climb stairs, or be on her feet for excessive periods of time because activities requiring knee flexion might be a problem, and also because being on her feet for excessive periods of time might aggravate her plantar fasciitis.  However, based on these two documents together, the VE's opinion changed and she determined that the Plaintiff would not be able to perform her past relevant work

but would be able to do jobs that have transferable skills but are more sedentary.  The skills that are transferred are data entry and typing.  One example of a sedentary, semiskilled job that the Plaintiff would be able to perform is a clerking position, of which 5,000 are available in the Chicago metropolitan region, which includes northwest Indiana.  The VE also testified that the Plaintiff could perform unskilled work, which includes 3,000 available telemarketing positions, 4,000 available assembly line positions, and 3,000 available cashiering positions.

In the fourth hypothetical, the ALJ combined hypotheticals one and three, which includes the lumbar pain before the surgery, when the Plaintiff's pain was a level 9 to 10 and she had pain 4 to 5 times per day for 2 to 3 hours.  Based on this pain before her lumbar operation, the VE determined that the Plaintiff could perform no work.

In the fifth hypothetical, the ALJ asked the VE to consider the Plaintiff's RFC prior to her December 2001 operation, excluding pain and excluding lying down, with the same age, education, and past work.  The ALJ further stated that the VE should also take into consideration that the Plaintiff can sit for one hour, then walk twenty minutes, lift and carry eight pounds frequently, touch her toes, not climb ladders, not squat, and occasionally climb stairs, kneel, bend, and reach her arms above her head.  Based on this scenario, the VE stated that the Plaintiff would not be able to perform her past work and that the Plaintiff's skills would transfer to performing sedentary, skilled level jobs such as a secretary with no lifting to exceed eight pounds.  She could also perform unskilled positions including 900 available positions as a security monitor, 1,000 available information clerking positions, and 1,000 available sedentary assembly positions.

Also, the VE determined that in order for a person to keep a job, that person should not be away from work more than two days per month, which is standard in the industry.  Additionally, the VE claimed that her opinion was consistent with the DOT and the companion publications of the

SCO.  Finally, the VE stated that if the Plaintiff became drowsy enough or had a loss of general mental acuity, she could not perform any of these jobs.

### E.  The ALJ's Decision

After considering the evidence, the ALJ conducted the five-step analysis set forth at 20 CFR § 404.1520.  At step one, the ALJ concluded that the Plaintiff was not performing substantial gainful activity since her alleged onset date.  At step two, the ALJ found that based on the medical evidence, including the Plaintiff's degenerative disc disease, bilateral plantar fasciitis, and chronic patellar-femoral malalignment, she has impairments that are severe.  However, at step three, these same impairments were determined to not be severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  Specifically, the Plaintiff's spinal impairments do not meet the requirements listed in 1.04A because she does not have the associated impingement on a nerve root or spinal cord; her foot and knee disorders are evaluated under listings 1.00B and 1.02A, respectively, and do not meet the requirements because she does not have an inability to ambulate effectively on a sustained basis; and the claimant has not alleged any mental impairment but the record reports her complaints to a psychiatrist of stress, and based on this single instance, the evidence does not show a severe mental impairment.

Based on the Plaintiff's current activities, the ALJ concluded that though her physical limitations would impose some hindrance, it would not be so severe as to preclude all work activity. The ALJ states that "[b]ased on the above evidence, it is clear that the [Plaintiff] exaggerates the severity of her symptoms and could, at the very least, perform sedentary, unskilled work on a sustained basis."  R. at 20.  Also, based on new evidence not available to the state agency medical

12

consultant, the ALJ determined that, contrary to the state agency medical consultant's conclusions, the Plaintiff could not perform light work, and should do no more than sedentary work.

At step four, the ALJ determined whether the Plaintiff can perform "past relevant work," which is defined in the Regulations at 20 CFR §404.1565, and concluded that because her past work as a cashier and secretary require walking more than 2 hours in an 8 hour day, she cannot return to her past relevant work because it requires activities excluded by her RFC.

Therefore, at step five, because the Plaintiff cannot perform her past relevant work, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the Plaintiff can perform, consistent with her RFC, age, education, and work experience.   The claimant's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations.  Although the ALJ determined that the Plaintiff could not return to the work she performed in the past, he found that the medical evidence did not establish that the Plaintiff could not do other types of work.  Based upon the Plaintiff's age, education, past work experience, and RFC, the ALJ determined that the Plaintiff could perform a significant range of sedentary work as defined in 20 CFR § 404.15697 and 416.967.   Specifically, the ALJ determined, after considering the VE's testimony and factors listed above, that the Plaintiff could perform sedentary, semi-skilled work as a cash-accounting clerk (5,000 regionally available jobs) and data entry clerk (3,000 regional jobs).  The ALJ also determined that the Plaintiff could perform sedentary unskilled jobs such as an assembly job (4,000 regional jobs), cashier (3,000 regional jobs), and telemarketer (3,000 regional jobs).

### F.  Appeals Council Evidence

On September 24, 2002, the Appeals Council received additional evidence, which was included as part of the record.  This medical evidence is dated December 9, 2002, to December 16, 2002 .  On December 9, 2002, Dr. Diane Luiciani, D.O., of North Point Internal Medicine of Crown Point, Indiana, prescribed CBC, CMP, ANA, RF, ESR, CRP, TSH fasting lipid panel.  On December 16, 2002, Dr. Bradley completed a "Rheumatologist Consultation Reply."  In his physical findings, Dr. Bradley found that the Plaintiff has chronic pain syndrome, including fibromyalgia and myofascial pain in her neck and back.  Dr. Bradley also recommended whirlpool and strengthening, as well as some prescriptions, for the Plaintiff's fibromyalgia, LBP, and other problems.


### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of

14

an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4). The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past relevant work; and (5) whether the claimant is capable of performing work in the national economy. Under the five-part sequential evaluation process, "[a]n

affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations omitted) (alterations in original); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*, 245 F.3d at 888. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

The Plaintiff presents four arguments in support of her Motion for Summary Judgment. First, the Plaintiff argues that the ALJ's RFC Assessment was erroneous because the ALJ did not examine the medical opinions and evidence available to him.  Second, the Plaintiff states that the ALJ erred by finding that the Plaintiff's limitations were not completely credible because he did not properly consider the Plaintiff's symptoms and also did not properly consider the Plaintiff's daily activities.  Third, the Plaintiff claims that the ALJ erred when he examined the VE, and further, when he listed the jobs that the Plaintiff could perform based on the VE's testimony.  Fourth, the Plaintiff asserts that the ALJ is required to consider the Plaintiff's disability for a closed period, which he did not do.  In her Memorandum in Support of the Commissioner's Decision, the Commissioner states that the ALJ's RFC determination was reasonable and that the VE's testimony supports the ALJ's decision.  The Court will address each of the Plaintiff's arguments in turn.

*1.  RFC Assessment*

The Plaintiff argues that the ALJ's RFC assessment was not supported by the record in that the ALJ based his decision on "selected medical history" and made his ultimate conclusion on only one doctor's opinion even though the Plaintiff had been examined by other doctors whose opinions and reports contradict this lone doctor's opinion.  Although the ALJ "need not address every piece of evidence," the ALJ "must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning."  *Johnansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing *Diaz*, 55 F.3d at 307).  However, the Seventh Circuit has held that "even a 'sketchy opinion' is sufficient if it assures [the court] that an ALJ considered the important evidence and enables [the court] to trace its reasoning."  *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003).

17

In determining whether the ALJ properly assessed the Plaintiff's RFC, the Court looks to whether the ALJ's RFC assessment was supported by substantial evidence and whether the ALJ built a logical bridge from the evidence to his conclusion. *See Young*, 362 F.3d at 1002. The ALJ must base his opinion on the testimony and medical evidence in the record and the ALJ cannot "make his own independent medical determinations about the claimant." *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985) (citing *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982)); *see also Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). In making the RFC assessment, the ALJ must follow the criteria set out in 20 C.F.R. § 404.1529(a)-(d) for evaluating the Plaintiff's symptoms to determine whether they could be reasonably expected to result from an impairment shown to exist and the effect they would have on the Plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(d)(4). "Symptoms," as the term is used in § 404.1529, refer to the Plaintiff's "own description of [her] physical or mental impairments." 20 C.F.R. § 404.1528(a).

The Plaintiff first argues that the ALJ based the RFC determination on only part of the evidence, ignoring important reports and opinions supplied by some other doctors. The Plaintiff is correct that the ALJ should look at all of the evidence and make a logical bridge. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (emphasizing that an ALJ that focuses only on the evidence contained in two medical reports was not enough to "build an accurate and logical bridge"). However, in this instance, the ALJ specifically references the opinions given by Drs. Thompson, Forgery, Klepsch, Coleman, Elnabity, Thesphasdin, Steward, Cristea, and medical reports provided by the Saint Anthony Medical Center and Methodist Hospital.

Further, the Plaintiff asserts that the ALJ misrepresented Dr. Klepsch's letter of June 2001. The Plaintiff points to the fact that the ALJ claimed that Dr. Klepsch stated that "the claimant should be able to do occasional standing, squatting, kneeling and climbing activities" instead of directly

quoting Dr. Klepsch's letter that the Plaintiff "should not be required to do a lot of squatting, kneeling, chair climbing, or being on her feet for excessive periods of time." Pl. Br. at 11; R. at 20, 245. However, the difference between saying a person can do something on "occasion" and saying the person "should not be required to do a lot of" a certain activity is not dissimilar enough to support a finding that the ALJ's decision is erroneous. In fact, the phrase "should not be required to do a lot of [an activity]" seems less limiting than the use of the word "occasional" as chosen by the ALJ. The Plaintiff claims that the ALJ should have to "re-contact" the doctor if "an ambiguity" exists; however, a case cited by the Plaintiff for this point, *Sharbeck v. Barnhart*, states that "[a]n ALJ need recontact sources only when the evidence received is inadequate to determine whether the claimant is disabled." 390 F.3d 500, 504 (7th Cir. 2004); Pl. Br. at 12. The evidence provided by Dr. Klepsch, as well as other doctors, was adequate for the ALJ to make a determination. Also, the ALJ correctly quoted this same portion of Dr. Klepsch's letter later in his decision, showing that he considered and had an appreciation for Dr. Klepsch's actual wording.

Additionally, the Plaintiff claims that the ALJ incorrectly ignored the fact that in November 2000, prior to the letter discussed above, Dr. Klepsch determined that the Plaintiff "is totally unable to work, cannot be on her feet." Pl. Br. at 11. However, what Dr. Klepsch actually wrote on the report from November 2000 is that the Plaintiff can "really only [perform] sedentary activities - can't be on feet, crawl, kneel, climb stairs, etc." R. at 254. Consistent with this opinion, the ALJ determined that the Plaintiff can do sedentary work.

Next, the Plaintiff asserts that the ALJ erred by not factoring Dr. Thephasdin's December 2001 RFC into the ALJ's official RFC determination. The Plaintiff is correct that the ALJ only briefly mentions Dr. Thephasdin's report, stating that "[p]rogress notes from Dr. Thesphasdin for the period September 7, 2001 to July 19, 2002, indicate that the claimant is mostly recovered from

her painful neck symptoms, and is under the care of Dr. Linda Stewart, M.D., for management of her back, leg and right foot pain." R. at 19. The ALJ references Trial Exhibit 24F, which is dated April 5, 2002. The Plaintiff asserts that Dr. Thephasdin's report dated December 2001 should have been given more weight in the ALJ's determination. Again, although the ALJ "need not address every piece of evidence," the ALJ "must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning." *Johnansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing *Diaz*, 55 F.3d at 307). However, the Seventh Circuit has held that "even a 'sketchy opinion' is sufficient if it assures [the court] that an ALJ considered the important evidence and enables [the court] to trace its reasoning." *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). In determining whether the ALJ properly assessed the Plaintiff's RFC, the Court looks to whether or not the ALJ's RFC assessment was supported by substantial evidence and whether the ALJ built a logical bridge from the evidence to his conclusion. *See Young*, 362 F.3d at 995.

In his decision, the ALJ provided a comprehensive overview of the medical evidence. Although Dr. Thesphadin made statements about the Plaintiff's poor medical condition when she was on crutches before she had surgery, he also states, after the surgery, that she is basically recovered. The ALJ took into account Dr. Thesphadin's overall assessment of the Plaintiff, as well as the assessments made by several other doctors, basing his determination on all of the available evidence. Based on *Johnansen*, the ALJ did not need to take into account every piece of evidence, and the Plaintiff's issue is with only one report allegedly ignored. Thus, even if the decision is "sketchy," the Court finds that the ALJ built a logical bridge between the evidence and his conclusions as required by *Young*.

Finally, the Plaintiff declares that the ALJ erred when he failed to properly consider the Plaintiff's mental impairments, specifically anxiety, when determining her mental RFC by not

appreciating the nature and extent of her pain, the side effects of her medication, and that her activities were limited. However, the ALJ specifically mentions the Plaintiff's mental impairment, stating that she "has not alleged any mental impairment but the record shows that she reported having seen a psychiatrist once over stress about her physical problems" and based on this one instance, the record "does not show that the claimant has a severe mental impairment." R. at 16. It is clear that the ALJ did not completely ignore or fail to appreciate the Plaintiff's mental capacity.

In her Memorandum in Support of Summary Judgment, the Plaintiff lists six items that she believes the ALJ should have considered with regard to her mental capacity. Each item listed by the Plaintiff is considered in turn. First, two of the items are reports that the Plaintiff wrote herself, in which she states that she has anxiety; however, no doctors' opinions are included in these reports. Next, on a report of notes written by a doctor, the doctor wrote that the Plaintiff said that she has an anxiety order, but the doctor never concluded that she did. The doctor also wrote that the Plaintiff "states she does not a have a mental problem" and "is not limited by a mental / emotional condition" but that she claims to "just [have] some anxiety." R. at 78. Similarly, Doctor Forgery's notes provide that the Plaintiff wants to be on medication again for her stress. These items do not provide any medical conclusions by a doctor, but rather only include statements by the Plaintiff. Therefore, neither of these notes can be considered as a doctor's opinion. A doctor's opinion necessarily must rely on the patient's subjective statements. *Flores v. Massanari*, 19 Fed. Appx. 393, 403 (7th Cir. 2001). However, in these reports, no opinion was given by a doctor, and therefore, the ALJ was not in error by not including these statements into his hearing decision. The ALJ cited to evidence in the record showing that the Plaintiff did not have a mental condition, and therefore, his decision is supported by the record.

The Plaintiff also notes that the Psychiatric Review includes a check next to the box stating "anxiety-related disorders," and that Doctor Stewart's report also has an "x" next to the lines "Depression" and "Anxiety." R. at 187, 305. However, because the doctor did not elaborate on her conclusion, this Court cannot conclude on this basis that the ALJ's determination was in error. *See Windus v. Barnhart*, 345 F. Supp. 2d 928, 942 (D. Wis. 2004) (affirming rejection of a doctor's opinion partially because he checked a box and did not elaborate); and *Dixon*, 270 F.3d at 1177 (affirming rejection of opinion expressed by writing "yes" next to a question with no elaboration on a form that the plaintiff's attorney had pre-typed). The Plaintiff never saw or was referred to regular treatment from a mental health specialist and did not come forward with evidence of a medically determinable mental impairment. The Court finds that the ALJ did not err in his RFC determination.

*2. Credibility Determination*

The Plaintiff argues that the ALJ's credibility determination contains an error of law because the ALJ found that the Plaintiff's limitations were not completely credible without properly considering the Plaintiff's symptoms or daily activities. As set forth above, meaningful judicial review "requires the ALJ to build a logical bridge between the evidence and the ALJ's conclusions." *Steele*, 290 F.3d at 941; *see also Wragg v. Barnhart*, 2005 WL 1113919, *9 (S.D. Ind. May 6, 2005); *Sarchet*, 78 F.3d at 307. Unexplained credibility findings may require remand if the ALJ fails to completely explain the credibility determination. *See Wragg*, 2005 WL 1113919 at *9. The ALJ should not "play doctor" by making "independent medical findings" but instead should base all findings on the objective medical evidence. *See Latkowski v. Barnhart*, 93 Fed. Appx. 963, 972 (7th Cir. 2004) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). However, "because the ALJ is in a considerably better position than [the] reviewing court to assess a claimant's credibility, an

22

ALJ's credibility finding commands deference and will not be overturned unless it was patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).   Hence, the ALJ's credibility determination is entitled to considerable weight and often such determinations involve "intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.'" *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)).   Reviewing courts will generally affirm the ALJ's credibility determinations so long as the ALJ's reasons are supported by the record.   *See Zurawski*, 245 F.3d at 887.   That is, the ALJ's credibility determination must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual . . . the weight the [ALJ] gave to the individuals's statement and the reasons for that weight."   *Id.*

When making a credibility determination, merely listing the claimant's daily activities as substantial evidence that the claimant does not suffer disabling pain is insufficient "because minimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity."   *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (ruling that the ALJ may not rely on minimal daily activities as substantial evidence that claimant does not suffer disabling pain)).   In *Clifford*, the ALJ stated in a "conclusory manner" that the claimant's testimony regarding the limitations placed on her was unsupported by the medical evidence.   *Id.*   The court found that the "record is replete with instances where [the claimant] sought medical treatment for pain symptoms related to her physical impairments."   *Id.*   Also in *Clifford,* the claimant stated that it took her two hours to do chores, she had to rest while doing chores, she cooks simple meals, sweeps but it hurts, she goes grocery shopping occasionally, could lift a twenty pound sack of potatoes but not for long, her husband helps

23

her with chores when possible, she babysits her grandchildren, walks to get exercise but must rest after going three to five blocks, and that she plays cards twice per month; the court held that her daily activities did "not undermine or contradict her claim of disabling pain" and so "[a]t this juncture, we lack a sufficient basis upon which to uphold the ALJ's credibility determination." *Id.*

In this matter, the ALJ found the Plaintiff's "allegations regarding pain and functional limitations, only partially credible and consistent using the assessment factors in SSR 96-7p. The claimant alleges that the combination of all of her impairments is so severe that she cannot perform any type of gainful work activity. R. at 20. However, the ALJ determined that "her daily activities indicate that she is able to perform many daily activities such as cooking, washing dishes, doing laundry, attending church, listening to the radio, and reading." R. at 20. In his RFC, the ALJ found that the Plaintiff can "lift no more than 10 pounds frequently and 20 pounds occasionally; to stand and/or walk no more than two hours in an 8-hour workday; to sit no more than 6 hours in an 8-hour workday; and to climb, balance, stoop, kneel, crouch and crawl no more than occasionally." R. at 16.

In her hearing testimony, the Plaintiff explained that she cannot sit straight up and that she has trouble bending. She said that approximately two or three times per day she cannot concentrate or do any activity because of her lumbar pain. The pain is typically at a 9 on a 10 point scale. She formerly had severe headaches, some of which made her blackout and not know what had happened, but since her most recent surgery, although she still has headaches, they reach at most a 7 on a 10 point scale. To recover from these headaches, the Plaintiff has to sit or lay down for at least half an hour. She has had severe pain in her knees and feet, to the point that she could barely walk and would tiptoe if absolutely necessary; after her surgery her left foot feels better but she cannot put down her right heel. The Plaintiff can walk no more than 20 minutes continuously before she has

24

severe pain. She stated that even after her surgeries, she cannot squat, climb stairs, or reach too far, but she can kneel. She can no longer bathe her children. She can make her children a light breakfast consisting of cereal or toast, and she can only stand at the sink for a few minutes to do dishes before she must sit down again. During the hearing, due to her lower back pain, the Plaintiff was not sitting up straight but was leaning to the side putting her weight on her elbow with her right arm behind her back to give her back some support; she cannot sit straight up without feeling "excruciating pain." Her foot pain feels like "stabbing pain" when her nerves spasm. Additionally, her medication causes her to be drowsy and sometimes she finds it difficult to follow conversations. She said she can lift a gallon of milk but could not do it for one-third of an entire workday. The Plaintiff's husband has to physically help her out of bed in the morning.

Based on case precedent as well as the ALJ's findings, it appears that the ALJ did not list enough evidence to find the Plaintiff only partially credible. The activities listed in *Clifford* are essentially the same activities listed by the Plaintiff. In *Clifford*, the Seventh Circuit held that the Plaintiff's abilities to perform activities such as taking two hours to do chores, resting while doing chores, cooking simple meals, sweeping although it hurts, going grocery shopping occasionally, lifting a twenty pound sack of potatoes but not for long, babysitting her grandchildren, walking to get exercise but resting after three to five blocks, and allowing her husband to help her with chores when possible, did "not undermine or contradict her claim of disabling pain" and therefore the court could not uphold the ALJ's determination. *Clifford*, 227 F.3d at 872. The activities listed by the Plaintiff in this case are similar to those in *Clifford*, such as having her husband help with chores, occasional shopping, preparing a light breakfast for the children, washing dishes, and doing laundry, but needing rest after doing chores. Therefore, the ALJ's listing of these activities performed by the Plaintiff by itself is not enough to find her credibility lacking.

The ALJ also stated that the Plaintiff is "post back, knee, and foot surgeries" and therefore she would likely have "some physical limitations, but would not be so severe as to preclude all work activity."  R. at 20.  However, the ALJ cites to no support in the record after making this statement. Though *Powers* held that the ALJ's findings are given more weight because he is in the best position to make the finding, he still must point to specific items in the record that uphold his conclusions. Not only did the ALJ fail to point to specific items in the record, but he failed to make a logical bridge between his findings and the record, as required in *Zurawski* and *Steele*.  The ALJ is not permitted to "play doctor" and therefore must base his findings on the objective medical evidence. *Latkowski,* 93 Fed. Appx. at 972.  In the instant matter, the ALJ failed to cite any objective evidence to support such a conclusion.  Instead, the ALJ pointed to only one letter from Dr. Klepsch and then mischaracterizes what Dr. Klepsch conveyed in the letter.  The ALJ stated that Dr. Klepsch said the Plaintiff could "do occasional standing, squatting, kneeling and climbing activities" but instead, Dr. Klepsch actually stated that the Plaintiff should not "be required to do a lot of" the listed activities. R. at 20, 245.  Though no significant difference exists between these statements, Dr. Klepsch's letter is the only objective piece of evidence upon which the ALJ bases his opinion and therefore Dr. Klepsch's letter is not sufficient to create the logical bridge necessary.  Although the ALJ concluded that "it is clear that the claimant exaggerates the severity of her symptoms, " two doctors, Dr. Dobson and Dr. Stewart, stated that the Plaintiff is credible.  R. at 20.  Because it appears that the Plaintiff cannot sit up straight and has excruciating back, neck, knee, and foot pain and the ALJ did not articulate any additional objective reasoning for not believing the Plaintiff, the Court cannot uphold the ALJ's credibility determination.

*3. Vocational Expert Findings*

The Plaintiff argues that the ALJ failed to properly assess which jobs the Plaintiff can perform. The ALJ stated that the Plaintiff "could, at the very least, perform sedentary, unskilled work on a sustained basis." R. at 20. Also, the ALJ stated that "[t]hough [he] agree[s] with the state agency's determination with respect to the claimant's mental residual functional capacity, new and material evidence entered into the record since the state agency medical consultants rendered their opinion necessitates a reduction in the claimant's remaining physical residual functional capacity to no more than sedentary work." R. at 20. The Plaintiff thus claims that the ALJ erred because he said that the Plaintiff could perform work that was light, instead of sedentary and work that was semi-skilled and skilled, instead of unskilled. However, the ALJ never stated that the Plaintiff could perform light work, but rather only stated that her past relevant work, which the ALJ noted the Plaintiff cannot currently perform, is categorized as light work. The ALJ also noted that based solely on the Plaintiff's physical limitations, she could not perform her past relevant work, finding that her mental capacity, which was addressed previously in this Order, would not inhibit her. The Plaintiff focuses on the ALJ's statement that the Plaintiff could "perform sedentary, unskilled work," but the Plaintiff fails to provide the clause immediately prior to this, which states that "at the very least" the Plaintiff can perform those jobs. R. at 20. The jobs listed by the ALJ that the Plaintiff could perform are all sedentary jobs, though some are skilled and some are unskilled. Therefore, the Plaintiff mischaracterizes the ALJ's statements.

In addition, the Plaintiff states that the ALJ did not properly take into consideration the Plaintiff's drowsiness and occasional confusion as a result of her medication, as well as her need to nap due to physical pain. The VE testified that if the Plaintiff had to recline two or more times per day for up to thirty minutes, she could not work. Also, the VE agreed that if a person was "drowsy

enough" she could not perform any of the jobs listed.  R. at 447.  The ALJ should have addressed the drowsiness, confusion, and need to nap in his decision.  *See Ferere v. Barnhart*, No. 03-2891, 2004 WL 842517, *8 (N.D. Ill. Apr. 16, 2004).  In *Ferere*, the claimant testified that she had depressive symptoms, such as nap requirements and panic attacks.  *Id*.  However, the ALJ did not address these matters within his decision, and therefore, because a court can only give substantial deference when an ALJ makes explicit findings and explains them in a way that affords meaningful review, the *Ferere* Court determined that the ALJ did not meet the standard.  *Id*. (citing *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002)).  The *Ferere* Court noted that if the ALJ had found that the claimant's alleged napping requirements and panic attacks were not credible, he necessarily should have provided a statement to this effect explaining his reasoning; the court further noted that even though the record contained valid reasons not to believe the claimant, because the ALJ failed to explicitly point to them, Ferere's motion for summary judgment was granted.  *Id*. at *2.  Likewise, in the instant matter, this Court acknowledges that appropriate reasons may exist for the ALJ not to find the Plaintiff's testimony credible; however, since the ALJ did not address the Plaintiff's drowsiness, confusion, or nap necessity within his decision, his opinion is insufficient in this respect.

Additionally, the Plaintiff claims that the ALJ confused some of the jobs that the VE stated could be performed at certain skill levels.  However, this Court finds that the 4,000 jobs listed were noted as being "sedentary" not "light."  R. at 445.  Additionally, the ALJ points to specific parts of the C.F.R. in aiding his definition of what types of work the Plaintiff can perform.

*4. Closed Period*

The Plaintiff claims that even if this Court finds that the ALJ's decision with regard to disability was correct and that the Plaintiff is not currently disabled, the Court should still find that the Plaintiff was disabled for a closed period. The VE testified that if the Plaintiff had pain as she described before her lumbar operation in May 2001, she would not be able to perform any work. However, on May 1, 2001, Dr. Vuckovic stated that the Plaintiff's "symptoms are out of proportion to her physical examination findings," which would render the VE's testimony based on the Plaintiff's described pain no longer relevant because the pain described may have been exaggerated. R. at 114. Based on her condition as of December 10, 2001, as noted by Dr. Thephasdin, the VE testified that she would not be able to perform any work. The Plaintiff had foot surgery in December 2001 and was in a wheelchair for almost three months prior to the surgery. The Plaintiff has undergone four surgeries over the course of one and one half years.

To find that a claimant is entitled to disability compensation for a closed period of disability, the period must last no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In his decision, the ALJ need not separately consider if a person is disabled for a closed period of time so long as the ALJ considers all of the medical evidence throughout the relevant period and his decision is reasonable. *Brown v. Barnhart*, No. 00-816, 2002 WL 663695, at *4 (N.D. Ill. Apr. 23, 2002); *Lewis v. Barnhart*, 201 F. Supp. 2d 918, 932 (N.D. Ind. 2002) (finding that "even though the ALJ did not precisely follow the order of the eight-step evaluation for closed periods of disability, this statement [in the ALJ's decision mentioning medical improvement] and his analysis of [the] residual functional capacity indicates that the ALJ [adequately] considered" the evidence). *Compare Janezich v. Barnhart*, No. 03-3112, 2004 W L 502601, at *10-11 (N.D. Ill. Mar. 12, 2004) (having

undergone six surgeries or surgical operations in 18 months, and also having severe complications, including testimony from a doctor stating that the claimant was convalescent for 32 weeks, as well as the VE testimony that the claimant's convalescence during 28 weeks of the 18 month period would render her unable to work, necessitated a remand to determine if the claimant was disabled for the closed period, as it was not addressed by the ALJ and the ALJ made his determination in overarching terms).

In the instant matter, the ALJ examined all of the medical evidence in the relevant times as evidenced by the detailed listing of all of the Plaintiff's surgeries and symptoms in the ALJ's decision. Further, at the time directly in the middle of the alleged closed period, a doctor examining the Plaintiff noted that he thought her symptoms did not match her physical findings. Upon careful review of the record, the Court finds that there is not a sufficient amount of evidence which leads to a finding that the Plaintiff was disabled for 12 months. On October 15, 2001, Dr. Klepsch reported tenderness but found no other abnormalities. Then, from December 11, 2001 through June 11, 2002, medical records appear to show that the Plaintiff's condition was poor. However, on July 12, 2002, Dr. Thephasdin reported that the Plaintiff was mostly recovered. The time span from December through June is less than 12 months, and therefore does not meet the required time of 12 months for a closed period. In contrast, the claimant in *Janezich* underwent six surgeries, received a doctor's recommendation for convalescence for 28 weeks, and the ALJ never considered her specific medical problems, only deciding her claim in terms of her "overall state." *Janezich,* 2004 W L 502601 at *10-11. Therefore, this Court finds that no adjustments to the ALJ's decision regarding the closed period need be made.

**CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ made errors of law in his credibility determination and in his disregard for the Plaintiff's drowsiness, confusion, and need for a nap. Therefore, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment and Memorandum in Support [DE 16].  The decision of the ALJ is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

SO ORDERED this 23rd day of March, 2006.


s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:  All counsel of record